**James William HOLMES, Appellant,**

v.

**Larry NORRIS, Director, Arkansas Department of Correction, Appellee.**

No. 94–2916.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 3, 1994.

Decided Aug. 3, 1994.

Order and Amending Order Granting Rehearing En Banc and Vacating Stay of Execution Aug. 3, 1994.

Deborah Sallings, E. Alvin Schay, Little Rock, AR, and Steven W. Hawkins, New York City, for appellant.

Olan Reeves, Little Rock, AR, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

The motion of appellant Holmes for stay of execution is granted, pending further order of this Court, the Supreme Court, or a justice thereof. The motion for appointment of counsel is also granted.

Holmes suggests at least two respects in which his trial counsel may have been ineffective in the constitutional sense: (1) by making improvident concessions in argument to the jury, and (2) by failing to urge a statutory mitigating circumstance that Holmes would apparently have been entitled to.

If this were Holmes's first habeas petition, there would be little doubt that these contentions are substantial enough to require a stay and appointment of counsel. But it is a motion for a stay to obtain time to research and file a second petition, see *McFarland v. Scott,* —— U.S. ——, ——, 114 S.Ct. 2568, 2573, 129 L.Ed.2d 666 (1994), and Holmes must overcome the abuse-of-the-writ defense. He appears to have a nonfrivolous theory for doing so. The same lawyer has (until now) represented Holmes throughout the case: at trial, on direct appeal, in the state-court post-

---

conviction proceeding, and in the first federal habeas proceeding. One could hardly expect that lawyer to argue his own ineffectiveness with any degree of conviction or persuasiveness. To make such an argument places a lawyer in the sharpest sort of conflict of interest, a conflict between his client and himself. This sort of conflict is surely "cause" to excuse Holmes's failure to raise counsel's ineffectiveness in his first habeas petition. Since 1988, appointment of counsel has been required by statute, 21 U.S.C. § 848(q)(4)(A), in federal habeas proceedings in capital cases. The counsel contemplated by Congress has to be counsel free of conflict of interest.

But what about procedural bar? The arguments presently suggested have never been made in the state courts. (Nor does the State say that they could be now.) Ineffectiveness of counsel in state-court postconviction proceedings cannot be "cause" for avoiding a procedural bar, and I assume for present purposes that conflict of interest can't be either. But the same lawyer was counsel on Holmes's direct appeal, and conflict of interest on direct appeal certainly qualifies as "cause." There is a federal constitutional right to counsel on direct appeal from a state conviction carrying a penalty of imprisonment or death.

Holmes can also probably show "prejudice." If his claims have merit, the prejudice is obvious.

Of course it is irritating to be confronted with an argument like this at the eleventh hour. But when life is at stake, we judges should swallow our irritation and choose life, at least to the extent of preserving it long enough to take a good look at Holmes's new case.

MAGILL, Circuit Judge, dissenting.

I dissent for the following reasons just five hours before the execution: (1) we have no jurisdiction as there is no federal habeas corpus petition either here or before the district court; (2) if the pending motions are considered a petition for habeas corpus, they constitute a successive petition; (3) the issues here have never before been brought up in state court nor in the first federal habeas corpus resulting in procedural default; and (4) Holmes has been egregiously dilatory.

The background support for the above are fully explicated in Judge Henry Woods' well-reasoned opinion denying the motion for stay of execution appended hereto.

### APPENDIX

#### ORDER

Petitioner, James William Holmes, has been represented by Marshall Carlisle of Fayetteville, a member of the Arkansas Bar, from the time he was charged until yesterday, one day before his scheduled execution. The other three defendants have, for some time, been represented by other counsel rather than their trial attorneys. Until yesterday, August 2, 1994, this Court had no official notification that Holmes had discharged Mr. Carlisle and retained his present counsel, Mr. Steven Hawkins of New York. This information was furnished by the Attorney General's Office which advised that a written authorization dated August 2, 1994, had been faxed stating that Holmes desired that Mr. Hawkins represent him.

The only indication whatsoever that Mr. Hawkins was representing Holmes appeared in a pleading filed with this Court at four p.m., August 1, 1994. This was an amendment by Clines and Holmes to a due process claim filed by Richley earlier in the day attacking the procedures of the Post Prison Transfer Board in their hearing. Clines and Holmes adopted the allegations of Richley. Hawkins signed the pleading as attorney for Holmes. This appeared somewhat strange since Hawkins was not the attorney of record for Holmes and Holmes had not even appeared before the Prison Transfer Board. In the amended complaint, however, there was a contention that a triple execution was unconstitutional for which no authority was cited. In the Court's opinion, both of these arguments were without merit.

Prior to the filing of this amended complaint, this Court had received no notice that Mr. Carlisle had been discharged as attorney for Holmes. Nor had any request ever been filed to substitute Mr. Hawkins as attorney for Holmes. However, on the basis of the

document dated August 2, and filed with the Attorney General, I will consider that since that date (one day before the scheduled execution), Mr. Hawkins is the attorney for Holmes.

The process through which Mr. Hawkins came to represent Holmes appears in an affidavit executed by him and attached to the petition under consideration. Mr. Hawkins solicited a call from Mr. Holmes by a message delivered to Mr. Holmes by one of the other attorneys in this case. When that call was made to him, Hawkins states: "I explained to Mr. Holmes that there was a possible basis for relief in his case on the basis that ineffective assistance of counsel had never been effectively explored because of the continued presence of trial counsel on his case." Holmes told him he would think it over. This conversation was exactly two weeks before his scheduled execution. Again, one week later, on July 27, according to Hawkins "we spoke again." No decision was reached concerning Hawkins representation. Significantly, on Friday, July 29, when Clines and Richley appeared before the Post Prison Transfer Board with a request for a recommendation of clemency to the governor, Holmes did not appear and made no request to appear. Nor did he join in the habeas petition filed by Richley on June 27 or the request by Clines to recall the mandate at approximately the same time. On Friday, July 29, Hawkins states that he "spoke to Mr. Holmes' father about his son's possible options." At five p.m. on Saturday, July 30, Holmes called Hawkins. "He told me that he had decided to pursue relief on the basis of ineffective assistance and that I could prepare the necessary pleadings on his behalf." The pleadings were filed with the Clerk of the Court at approximately three p.m. on August 2, little more than twenty-four hours before his scheduled execution.

The basic pleading is denominated "an emergency motion for a stay of execution, and appointment of counsel, and supporting memorandum of law." It is not a habeas corpus petition but it is a request for time to prepare such a petition based on "potential" ineffectiveness of counsel. The three examples of such ineffectiveness mentioned in the petition are not persuasive. Mr. Carlisle's handling of the gun and ballistic issue is criticized. However, it is difficult to see how Mr. Carlisle could have done much with this issue either in the trial or his summation. Don Lehman was killed with a gun which Holmes had purchased and brought into the Lehman home. According to the state's ballistics expert, this gun fired the fatal shots. Mr. Carlisle was in a difficult position. He used a trial technique that is not unusual—self-deprecation of his ability to cross-examine the ballistics expert. As a matter of fact, the record demonstrates that Mr. Carlisle conducted a thorough cross-examination of this witness. The defense presented by Mr. Carlisle on behalf of Holmes was not that the gun did not fire the fatal shots but that it was used by one of the others to kill Don Lehman. The statement that Carlisle conceded the guilt of Holmes is simply not true. Holmes was the only defendant who took the stand. He admitted participating in the robbery but vehemently denied killing Lehman. The state had already presented overwhelming evidence that Holmes was one of the robbers. Carlisle's failure to mention Holmes' lack of a significant criminal record in closing is cited as another example of ineffectiveness. Holmes was the only one of the defendants to take the stand. If he had a felony record, surely the state would have brought this out by way of impeachment. Carlisle may well have thought that Holmes' lack of a criminal record was obvious to the jury. While Holmes apparently had no felony convictions, his past conduct was not exemplary. Carlisle may well have decided not to open up his past conduct when the state had an opportunity to reply in rebuttal. I have re-read his closing argument from the transcript, and I do not find it to be substandard but above average. Petitioner complains of the Biblical and spiritual references but Carlisle may understandably have thought such references might be appealing to a rural, Northwest Arkansas jury. If the other potential indicia of ineffectiveness are similar to those above cited, they will come far short of the standard imposed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner must demonstrate that his attorney's representation fell below an objective standard of reasonableness under the circumstances. He

must also establish that the alleged error was so prejudicial that there is a reasonable probability it would have changed the result of his trial.

The Court realizes that petitioner is not filing a habeas. At this late hour, he is asking time to develop a "potential" habeas claim based on ineffective assistance of counsel. The request is denied, because in the Court's opinion he has waived his right to such a stay. Mr. Carlisle has represented Mr. Holmes for thirteen years. At any time, if he was not satisfied with Carlisle's services, he could have advised the state court or federal court and other counsel would have been provided. Mr. Carlisle and other counsel convinced me in 1988 that all the defendants were entitled to a new trial on the hypnosis issue. While new counsel have appeared to represent the other defendants, Holmes has continued to retain Mr. Carlisle. It is hard to read the record in this case without concluding that the motivation for substitute counsel came not from Mr. Holmes but from Mr. Hawkins. It would appear that neither Mr. Holmes nor Mr. Hawkins had any factual or legal basis for the ineffective counsel argument before Holmes was persuaded to substitute Hawkins as counsel on Saturday afternoon, July 30. Hawkins mentions the "short time we have had a chance to look at the record of this case."

The contention is made that Holmes was ignorant of his rights and could not evaluate whether counsel was ineffective. We know that two weeks before his execution date and again one week before his execution date, Holmes was advised of his rights by none other than his present counsel, Hawkins. Although advised of his rights two weeks before his execution date, he waited until a little more than twenty-four hours before his execution date to act on those rights. Holmes was so inattentive to his rights that he did not request a clemency hearing. We hold that a condemned inmate cannot sleep on his rights until the day before his execution and then demand a stay to allow his substitute counsel of one day to prepare a habeas petition on the "potential" ground of ineffectiveness of counsel.

Petitioner places great reliance on *McFarland v. Scott,* —— U.S. ——, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994). This case held that a *pro se* capital defendant will be permitted to pursue habeas for first time. If he has no counsel, then he is entitled to a stay so counsel may be appointed to pursue this avenue. However, it is important to note that the Supreme Court said:

This conclusion by no means grants capital defendants a right to an automatic stay of execution. Section 2251 does not mandate the entry of a stay, but dedicates the exercise of stay jurisdiction to the sound discretion of a federal court. Under ordinary circumstances, a capital defendant presumably will have sufficient time to request the appointment of counsel and file a formal habeas petition prior to this scheduled execution.... On the other hand, if a dilatory capital defendant inexecusably ignores this opportunity and flouts the available processes, a federal court presumably would not abuse its discretion in denying a stay of execution.

*Id.* at ——, 114 S.Ct. at 2573.

In the case at bar, Holmes has had competent counsel to pursue a habeas claim, three district court hearings, two court of appeals hearings, and two Supreme Court reviews in the federal courts alone without considering the state court proceedings. Relief cannot be denied Holmes for abuse of the writ because he has not filed a habeas corpus writ. Relief can be denied for his delay until one day before his execution in discharging his counsel of thirteen years and then through substitute counsel requesting a stay so he can explore "potential" grounds for habeas based on ineffective assistance of counsel.

In this respect I have re-read entirely the record of this case filed with the Supreme Court of Arkansas, along with pertinent portions of the transcript. Mr. Carlisle's representation of Holmes during the trial was more aggressive and more substantial than any of the attorneys representing the co-defendants. He participated in all aspects of the trial and represented Holmes with vigor and ability. On the entire record, I am firmly convinced that Holmes was afforded competent representation not only at the trial level but also on appeal.

The motion for a stay of execution is hereby denied, along with the request for a conference by petitioner's attorney.

IT IS SO ORDERED this 3rd day of August, 1994.

---

HENRY WOODS, U.S. District Judge

Before RICHARD S. ARNOLD, Chief Judge, and McMILLIAN, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN and MORRIS S. ARNOLD, Circuit Judges.

## ORDER

### Aug. 3, 1994

This matter comes before the court on appellee's petition for rehearing and suggestion for rehearing en banc. It is hereby ordered that the suggestion for rehearing en banc is granted. The stay of execution of a sentence of death previously granted is vacated.

On rehearing before the court en banc, the order of the United States District Court for the District of Eastern Arkansas is affirmed, and the appellant's motion for a stay of execution of a sentence of death is denied.

Chief Judge Arnold and Judge McMillian would deny the suggestion for rehearing en banc and grant a stay.

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, MORRIS S. ARNOLD, Circuit Judges.

## AMENDED ORDER

### Aug. 3, 1994

This matter comes before the court on appellee's petition for rehearing and suggestion for rehearing en banc. It is hereby ordered that the suggestion for rehearing en banc is granted. The stay of execution of a sentence of death previously granted is vacated. Chief Judge Arnold and Judge McMillian would deny the suggestion for rehearing en banc.

On rehearing before the court en banc, the order of the United States District Court for the District of Eastern Arkansas is affirmed, and the appellant's motion for a stay of execution of a sentence of death is denied.

Chief Judge Arnold, Senior Judge Henley and Judge McMillian would grant a stay.