**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-11049

_____


BRUCE EDWIN CALLINS,

Petitioner-Appellant,

VERSUS

GARY JOHNSON,
Director, Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Texas
_____

July 12, 1996

Before HIGGINBOTHAM, SMITH, and DeMOSS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


Bruce Callins appeals the denial of his petition for a writ of habeas corpus.  Finding no error, we affirm.


I.

In 1980, Callins went to a nude dancing establishment named Norma's Lounge, told the bartender to put the club's receipts in a bag, and ordered the patrons to empty their pockets.  "Allen Huckleberry, who was sitting at the bar, did not surrender his wallet quickly enough to suit [Callins], and [Callins] shot him in

the neck, causing him to bleed to death." *Callins v. State*, 780 S.W.2d 176, 180 (Tex. Crim. App. 1986), *cert. denied*, 497 U.S. 1011 (1990). Callins then rifled through Huckleberry's pockets, took the other victims' property, and fled.

After convicting Callins of one count of capital murder and two counts of aggravated robbery, a jury imposed the death penalty. The Texas Court of Criminal Appeals affirmed Callins's murder conviction and death sentence but vacated his robbery convictions.

Callins unsuccessfully sought post-conviction relief, first in the Texas state courts and then in the federal courts. He later filed another state habeas petition, which the state courts denied.

Callins then filed this petition, contending that the Texas Court of Criminal Appeals had violated his due process rights, his attorney was ineffective on direct appeal, and his capital murder conviction violated Texas's carving doctrine.

The district court denied Callins's petition, finding that his appellate counsel was not ineffective and that Callins abused the writ in bringing the other claims. Callins appeals only the district court's rejection of his *ex post facto* and due process arguments arising from the state's asserted misapplication of his carving claim.

## II.

Callins contends that his murder conviction violated Texas's erstwhile carving doctrine, which prohibited the state from "carving out" and prosecuting more than one crime arising from any

2

single transaction. *See*, *e.g.*, *Douthit v. State*, 482 S.W.2d 155, 161 (Tex. Crim. App. 1971). Callins argues that his actions at Norma's Lounge constituted a single transaction, and further asserts that his jury returned final verdicts on the robbery convictions before completing its consideration of the murder charge. Thus, concludes Callins, the robbery convictions precluded the state from continuing the murder prosecution.

The Court of Criminal Appeals abolished the carving doctrine on the first day of Callins's trial, but Callins insists that the trial court's refusal to apply that doctrine infringed upon his due process rights and the "principles embodied in the *Ex Post Facto* Clause."

The district court found Callins's carving doctrine challenge to be an abuse of the writ. Federal courts will consider a claim presented in a second habeas petition only if the petitioner shows that (1) he had cause for failing to raise the alleged error earlier and suffered prejudice therefrom, or (2) failure to do so would result in a fundamental miscarriage of justice. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991); *see also* 28 U.S.C. § 2254 Rule 9(b) (1994) (permitting dismissal if failure to assert claim in earlier petition constituted an abuse of the writ).

Callins concedes that he could have presented his carving doctrine challenge in his first petition. Nonetheless, he contends that we should entertain that claim at this late date because (1) his first habeas attorney's failure to raise the argument amounted to ineffective assistance of counsel; (2) he is actually

innocent of both capital murder and the death penalty; and (3) the Texas Court of Criminal Appeals waived the state's interests in finality and federalism.

### A.

Callins contends that his habeas attorney's alleged ineffectiveness constitutes cause. We have already rejected that argument. "[C]ounsel's ineffectiveness will constitute cause only if it is an independent *constitutional* violation," *Coleman v. Thompson*, 501 U.S. 722, 755 (1991) (emphasis added), and there is no *constitutional* right to counsel in habeas proceedings, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Thus, no error by habeas counsel can ever constitute cause for abusing the writ. *See Irving v. Hargett*, 59 F.3d 23, 26 (5th Cir. 1995), *cert. denied*, 116 S. Ct. 929 (1996); *Johnson v. Hargett*, 978 F.2d 855, 859 (5th Cir. 1992), *cert. denied*, 507 U.S. 1007 (1993).

Callins insists that *Coleman* is distinguishable because it addresses only the Sixth Amendment right to counsel, not statutory rights to counsel. Congress recently endowed prisoners with a right to counsel in capital habeas proceedings, s*ee* 21 U.S.C. § 848(q)(4)(B) (1994); *McFarland v. Scott*, 114 S. Ct. 2568, 2571 (1994), and Callins asserts that § 848(q)(4) contains an implied right to counsel who are effective within the meaning of the Sixth Amendment. Callins further argues that he should not be held responsible for the actions of an attorney who failed to satisfy that standard.

4

*Coleman* is not distinguishable. Cause "must be something *external* to the petitioner." *Coleman*, 501 U.S. at 753 (emphasis in original). Attorney errors are not external, "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). The Sixth Amendment imposes an exception to this rule, in that it forbids the state from making an accused defend himself without effective assistance of counsel. *See id.* at 754; *Carrier*, 477 U.S. at 488. Absent a failure by the state to perform its *constitutional* obligations, however, an attorney's error is imputed to his client. *See Coleman*, 501 U.S. at 755.

The § 848(q)(4) right to counsel supplements the Sixth Amendment right to counsel; it does not impose a constitutional obligation upon the state. In fact, § 848(q)(4) imposes a burden only on the federal government, not the state governments. Thus, even assuming *arguendo* that § 848(q)(4) contains an implied effectiveness requirement and that Callins's first habeas counsel did not meet that standard, *Coleman* dictates that such a shortcoming does not constitute cause.[1]

---

[1] The Eighth Circuit arguably has found that prisoners are not responsible for petitions filed by counsel who failed to satisfy an implied effectiveness requirement of § 848(q)(4). *See Murray v. Delo*, 34 F.3d 1367, 1373-74 (8th Cir. 1994) (enunciating exception to *McCleskey* for cases in which counsel files petition without client's knowledge), *cert. denied*, 115 S. Ct. 2567 (1995); *Holmes v. Norris*, 32 F.3d 1240, 1241 (8th Cir.) (holding that habeas attorney's conflict-of-interest is cause for failure to raise ineffective assistance of counsel claim), *vacated*, 32 F.3d 1244 (en banc), *cert. dismissed*, 115 S. Ct. 379 (1994). The Eighth Circuit cases do not attempt to distinguish *Coleman*, however, and to the extent that they hold the state responsible for statutorily-inadequate counsel, they are inconsistent with that case.

B.

Callins argues that failure to consider his carving doctrine claim would result in a fundamental miscarriage of justice because he is "actually innocent" of both capital murder and the death penalty. Callins explains that the carving doctrine limits his criminal liability to only one of the offenses he committed at Norma's Lounge, rendering him actually innocent of all but one robbery conviction. Similarly, Callins contends that as his capital conviction was void *ab initio*, he is ineligible for the death penalty and is therefore actually innocent of that sentence.

1.

Callins is not actually innocent of capital murder. Federal courts may excuse abuses of the writ only in "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey*, 499 U.S. at 494. This "miscarriage of justice" exception "is concerned with actual as compared to legal innocence," *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992), and "[t]he term 'actual innocence' means *factual*, as opposed to *legal*, innocence," *Johnson*, 978 F.2d at 859 (emphasis in original). Thus, "a petitioner [must] *supplement*[] a constitutional claim with a 'colorable showing of *factual* innocence.'" *McCleskey*, 499 U.S. at 495 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)) (emphasis added).

Callins does not attempt to show that he is factually innocent of capital murder; in fact, he concedes that he "engaged in the

6

acts that resulted in the death of Allen Huckleberry" and is "morally" guilty of capital murder.

Nonetheless, Callins contends that under substantive penal law, he is liable for only one offense. Assuming *arguendo* that the carving doctrine limits Callins's criminal liability to one offense, however, that doctrine does not determine for *which* offense he is liable. In fact, even accepting Callins's allegations, that one offense would be capital murder if (1) the prosecution had chosen not to pursue the robbery counts or (2) the jury had returned a completed verdict on capital murder before finishing its deliberations on robbery.

In short, Callins has not supplemented his constitutional claim with a factual showing that he did not commit capital murder; instead, he contends only that his constitutional claim establishes his innocence, i.e., that he is legally innocent. Thus, Callins has not shown that he is actually innocent. *Cf. Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (holding that petitioner must show "as a factual matter, that he did not commit the crime of conviction"), *petition for cert. filed* (May 15, 1995) (No. 94-9266); *Johnson*, 978 F.2d at 860 n.18 (stating that "actual innocence requires more than showing of constitutional error, even when verdict would have been different absent error").

2.

Callins contends that he is ineligible for the death penalty

7

because his underlying capital conviction is void. At least in capital cases, the "actual innocence" exception to the cause-and-prejudice test encompasses not only innocence of the underlying offense, but also innocence of the sentence. *See Sawyer*, 505 U.S. at 340-41. To invoke this exception, a petitioner must "show by clear and convincing evidence that but for constitutional error *at his sentencing hearing*, no reasonable juror would have found him eligible for the death penalty." *Id.* at 350 (emphasis added).

Callins does not contend that the state trial court erred during the sentencing phase of his trial; instead, he attacks only his underlying conviction. As we have already held, however, "[t]he special *Sawyer*-version of the 'miscarriage of justice' exception is limited to assertions of errors of constitutional magnitude occurring at sentencing." *Fearance v. Scott*, 56 F.3d 633, 637-38 (5th Cir.), *cert. denied*, 115 S. Ct. 2603 (1995).

Callins contends that *Fearance* is distinguishable because it involves a claim that arose after trial. The *Fearance* court squarely held that *Sawyer* applies only to errors occurring at sentencing; it in no way relied upon the timing of the alleged error. *See id.* at 638. In addition, the *Sawyer* exception "focus[es] on those elements that render a defendant eligible for the death penalty." *Sawyer*, 505 U.S. at 347. As such, it does not logically extend to errors that arose outside of the sentencing phase of a defendant's trial. *See Fearance*, 56 F.3d at 638.[2]

---

[2] Callins contends that two of our cases, *Sones v. Hargett*, 61 F.3d 410 (5th Cir. 1995); *Smith v. Collins*, 977 F.2d 951 (5th Cir. 1992), *cert. denied*,
(continued...)

8

Finally, Callins draws an unlikely analogy to *Teague v. Lane*, 489 U.S. 288 (1989), arguing that we should interpret *Sawyer*'s "ineligibility" exception in light of *Teague*'s exception for new rules rendering an entire class of persons ineligible for execution. *Teague* holds that habeas petitioners generally do not benefit from "new rules" announced after direct review of their convictions. *See id.* at 310. The exception invoked by Callins covers "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989).

Callins's constitutional challenge would not prohibit the execution of a specific "class of defendants" based upon their offense or status: The government may punish murder with death, and those who kill while committing other crimes do not necessarily share an "innate characteristic such as insanity or mental retardation which precludes imposition of the death penalty." *See White v. Johnson*, 79 F.3d 432, 438 (5th Cir. 1996), *petition for cert. filed* (Apr. 29, 1996) (No. 95-8790). Thus, Callins's claim does not fall within the *Penry* exception to *Teague*.

In addition, we fail to understand the relevance of *Penry*. *Sawyer* and *Fearance* are explicit, stating that we should consider only whether a petitioner is factually innocent of either an element of the crime or a mandatory sentencing criterion. We

---

(...continued)
114 S. Ct. 97 (1993), suggest that *Sawyer* applies to *any* constitutional defect if, but for the defect, the defendant would have been "ineligible" for the sentence. Each case involves an allegation of error relating only to sentencing, not conviction, and neither questions the square holding of *Fearance*.

9

previously likened the "actual innocence" standard to a different *Teague* exceptionSSone that permits reliance on new procedures that are "implicit in the concept of ordered liberty"SSbut we did so because those procedures are so fundamental that they "implicat[e] *factual* innocence." *See Sawyer v. Butler*, 881 F.2d 1273, 1293 (5th Cir. 1989) (en banc) (emphasis added), *aff'd*, 497 U.S. 227 (1990).

To conclude, *Sawyer* does not hold that anyone who is legally ineligible for a particular punishment is "actually innocent." *Sawyer* merely likens sentencing criteria to the elements of a crime, focusing on the factual, not legal, basis for the verdict.

C.

Finally, Callins contends that the Texas Court of Criminal Appeals "effectively waived the State of Texas'[s] interests in federalism and finality regarding *ex post facto* claims" in *Ieppert v. State*, 908 S.W.2d 217 (Tex. Crim. App. 1995). *Ieppert* holds that *ex post facto* claims are not subject to Texas's procedural default rules because they are based upon a categorical prohibition against government behavior, not an individual right. *See id.* at 220.

Though the legal basis for Callins's claim is not entirely plain, we divine two possible contentions. First, he might argue that the state actually waived the protection of Rule 9(b). Assuming *arguendo* that the state may waive that defense, *but cf. United States v. Flores*, 981 F.2d 231, 236 n.9 (5th Cir. 1993) (holding that district courts may raise abuse of the writ *sua*

10

*sponte*), the state has vigorously pressed it in this case.

Second, and more likely, Callins might contend that we should determine whether consideration of this particular petition would intrude significantly on the interests of the state in federalism and finality, taking into account the views of the Texas Court of Criminal Appeals as to whether a particular type of claim should be subject to forfeiture. While the Supreme Court could have mandated such a case-by-case analysis, it did not; instead, it held that we may consider a second petition *only* if the petitioner shows cause and prejudice or actual innocence.[3] As *Ieppert* is not relevant to either inquiry, we are foreclosed from holding that the state court impliedly waived its government's right to plead abuse of the writ.[4]

## III.

While this appeal was pending, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214. That act would require us to dismiss a claim presented for the first time in a second habeas petition unless it relies upon a legal theory or factual predicate that was previously unavailable to the petitioner.

---

[3] *See Schlup v. Delo*, 115 S. Ct. 851, 861 (1995) (stating that if a petitioner fails to show cause and prejudice, a federal court may review his claims *only* if failure to do so would result in a miscarriage of justice); *Fearance*, 56 F.3d at 637 (same).

[4] Even if we had equitable discretion, *Ieppert* would hardly end our inquiry. Rule 9(b) protects not only the states' interests in finality and federalism, but also the federal courts' interest in not expending resources on unnecessarily repetitive litigation. *See McCleskey*, 499 U.S. at 491-92.

A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application *shall* be dismissed unless§§

    (A)  the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; *and*

    (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

*Id.* § 106(b)(2) (to be codified at 28 U.S.C. § 2244(b)(2)) (emphasis added).

Callins concedes that he could have presented his carving doctrine claim in his first petition.  In fact, he contends that his counsel was ineffective for failing to do so.  Thus, § 106(b) would bar us from considering that claim if that subsection is applicable to cases pending on appeal at the time of its enactment.

Congress did not specify an effective date for § 106 as it did for § 107 of the Act.  Because we lack discretion to consider Callins's challenge under either *McCleskey* or the antiterrorism act, however, we need not decide whether § 106 applies to this appeal, and the foregoing analysis is based on our understanding of *McCleskey*.

Finding this petition to be an abuse of the writ, we AFFIRM.