WIENER, Circuit Judge,
dissenting:
I respectfully dissent. I do not do so because of any disagreement with the panel majority’s post -Holland analysis of the role of equitable tolling in the AEDPA’s one-year time bar. In fact, I remain hopefully confident that, in light of the timely and diligent performance of pro bono counsel, the district court will hold on remand that Henderson qualifies for equitable tolling and will afford him an evidentiary hearing on his Atkins claim. Rather, I dissent because I firmly believe that the AEDPA’s time bar is inapplicable to Henderson’s Atkins claim, grounded as it is in his alleged “intellectual disability.”[1] The producing cause of my disagreement with the majority is its insistence that the *783 “camel” of Henderson’s Atkins claim pass through the “needle’s eye” of actual innocence, thereby subjecting his and all other petitioners’ Atkins claims to the AEDPA’s statute of limitations.
The Supreme Court cases that have recognized the concept of “actual innocence” require the habeas petitioner to allege his factual innocence — that he simply did not commit the act in question — and, in some instances, to allege some constitutional flaw in his trial as well. Not so, however, for an Atkins claim: In Atkins, the Supreme Court held that executing an intellectually disabled person for committing any crime would violate the Eighth Amendment, regardless of such person’s factual guilt of the particular crime as found in an errorfree trial of conviction. I am convinced, therefore, that Supreme Court precedent rejects the shoe-horning of an Atkins claim into the cubbyhole of actual innocence and thereby subjecting such a claim to the AEDPA’s time bar.[2] Here’s why.
The Supreme Court has defined a claim of “actual innocence” as constituting either (1) a substantive argument that, as a matter of fact, the petitioner did not commit the acts that constitute his crime of conviction, adding that he must prove such an assertion by “truly persuasive” newly discovered evidence (Herrera v. Collins[3]); or (2) a procedural argument that constitutional errors at trial, along with newly discovered evidence of his factual innocence, undermine the certainty of the petitioner’s conviction (Schlup v. Delo[4] ). Unlike an Atkins claim, which makes unconstitutional the execution of the petitioner for any crime, the Herrera and Schlup varieties of actual innocence claims render unconstitutional the petitioner’s execution or imprisonment for his one crime of conviction only. Actual innocence claims under both Herrera and Schlup focus on the particular facts of the petitioner’s offense of conviction; Schlup claims also focus on his particular trial of conviction. Moreover, both of these types of actual innocence claims are conditioned on the existence of new evidence that was not presented at trial and that calls the petitioner’s conviction into question.[5]
In Sawyer v. Whitley,[6] the Supreme Court defined “actual innocence” more ex *784 pansively by including procedural claims based on constitutional error at sentencing. A Sawyer claim of actual innocence that addresses the sentencing phase of trial does so the way that a Schlwp claim addresses such error at the guilt-innocence phase. To prevail on a Sawyer claim of actual innocence, the petitioner must show “by clear and convincing evidence that but for constitutional error at his sentencing hearing, no reasonable juror would have found him eligible for the death penalty under [state] law.”[7]
As the Supreme Court stated in Sawyer, referring to these claims as “actual innocence of the death penalty” is “not a natural usage of those words.”[8] The Court nevertheless strove “to construct an analog to the simpler situation represented by the case of a noncapital defendant.”[9] Thus, instead of claiming factual innocence of the offense itself, Sawyer’s sentencing variation on the actual innocence theme embodies a claim that the courts erred by sentencing to death a person who is factually innocent of either (1) the element or elements of such person’s crime of conviction that make it a capital offense, or (2) the aggravating factors that make such person eligible to be sentenced to death.
The “eligible for the death penalty” language in Sawyer can be misleading when taken out of context. In defining the Sawyer variety of actual innocence claims, the Supreme Court further explained that “the ‘actual innocence’ requirement must focus on those elements that render a defendant eligible for the death penalty, and not on additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error.”[10] The idea is that a constitutional error which occurred in the presentation of mitigating evidence during the sentencing phase would not necessarily undermine the jury’s evaluation of the aggravating evidence that led to the sentence of death.
We have previously tried to clarify this point by noting that “Sawyer does not hold that anyone who is legally ineligible for a particular punishment is ‘actually innocent.’ Sawyer merely likens sentencing criteria to the elements of a crime, focusing on the factual, not legal, basis for the verdict.”[11] So, gateway claims of actual innocence under both Schlup and Sawyer assert constitutional errors in convicting or sentencing a person, but only as to the particular crime for which he was indicted and tried. Diametrically opposed to such claims of actual innocence are claims of constitutional immunity from being put to death for any crime, regardless of when, where, or how committed — of which genre an Atkins claim is a prime example.
An Atkins claim asserts a per se violation of the Eighth Amendment on the ground that the intellectually disabled petitioner is constitutionally immune from— “legally ineligible for,” rather than “actually innocent of’ — the death penalty, regardless of his particular crime of conviction. Thus, Atkins claims are conceptually indistinguishable from those claims of death-penalty immunity recognized in Ford v. Wainwright[12] and Roper v. Simmons,[13] both of which focus on some trait that is *785 unique to the petitioner, i.e., that he is insane (Ford) or under the age of sixteen (Roper). Such a trait is the thing that makes the execution of that petitioner for any crime unconstitutional, notwithstanding his proven guilt in an errorfree trial and his death sentence imposed in an equally errorfree sentencing proceeding.
Significantly, these immunity claims are asserted independently of any constitutional error that might have been committed by defense counsel, or by the prosecutor, or by the courts. Generally, neither the petitioner nor any other party takes issue with the petitioner’s underlying factual guilt.[14] Reduced to their essence, these immunity claims insist that “[t]he Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is [incompetent]. Petitioner’s allegation of [incompetency] in his habeas corpus petition, if proved, therefore, would bar his execution.”[15]
This crucial distinction explains why the Supreme Court has never discussed an Atkins, Ford, or Roper claim in terms of “actual innocence.” Rather, for example, the Court has consistently confirmed that Atkins is a “categorical restriction[ ] on the death penalty.”[16] In addition, the Supreme Court has expressly distinguished immunity claims — specifically one asserted under Ford — from claims of actual innocence, explaining: “Unlike [Herrera], Ford did not challenge the validity of his conviction. Rather, he challenged the constitutionality of his death sentence in view of his claim of insanity.”[17]
We, in contrast, have tended to cloud the issue — as does the panel majority today — by trying to force the square peg of an Atkins claim into the round hole of the actual innocence framework, mistakenly employing the label and theory of “actual innocence” to do so.[18] In In re Webster,[19] we addressed 28 U.S.C. § 2255(h)(1) — the codification of the actual innocence exception to successive petitions for federal prisoners, which parallels 28 U.S.C. § 2244(b)(2)(B)(ii) for state prisoners— which requires petitioners to present “newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense.”[20] We held that § 2255(h)(1) cannot encompass an Atkins claim “where [the petitioner] does not assert that the newly discovered evidence would negate his guilt of the offense of which he was convicted, i.e., capital mur *786 der.”[21] We based our In re Webster holding on the conclusion that “there is no reason to believe that Congress intended the language ‘guilty of the offense’ to mean ‘eligible for a death sentence,’ ” presuming that Atkins claims would have been covered by § 2255(h)(1) if Congress had used the words, “actual innocence” or “eligible for the death penalty” instead.[22] Unfortunately, we failed to add the obvious corollary that an independent Atkins claim generally fails to qualify as a Sawyer actual innocence claim for the additional reasons that it involves neither the introduction of new evidence of factual innocence nor allegations of constitutional error at sentencing.[23]
This is why, to get past that confusion now, we must think outside the actual innocence box. Henderson has never asserted, per Herrera, that he did not do the deed and has never asserted, per Schlwp, that some constitutional error at trial, in combination with new evidence of his factual innocence, undermines his conviction. Most significantly, although Henderson’s first argument does mistakenly try (likely out of Sisyphean frustration) to fit his Atkins claim into the subset of Sawyer claims of actual innocence, nowhere does he point to any constitutional error in the sentencing phase of his trial; nowhere does he contest the jury’s factual finding of aggravating factors warranting the death penalty; and nowhere does he identify any newly discovered evidence, which is an indispensable prerequisite to the assertion of every type of true actual innocence claim, viz., Herrera, Schlup, and Sawyer. Rather, Henderson advances the straightforward insistence that under Atkins he is constitutionally immune to the death penalty because he is intellectually disabled, nee retarded. Moreover, this in no way precludes his pleading the inapplicability of the AEDPA’s time bar in the alternative, even if inconsistent with equitable tolling, which implicitly assumes the applicability of that time bar. All know that inconsistent alternative pleading has been recognized and approved since the enactment of the federal rules of procedure.[24]
And, even though Henderson’s attempt to analogize his case to Souter v. Jones[25] is flawed, so is the State’s reciprocal effort to distinguish this case from Souter. The Sixth Circuit held in Souter that the petitioner had made a valid Schlup claim of actual innocence and that “equitable tolling of the one-year limitations period based on a credible showing of actual innocence is appropriate.”[26] Although the panel majority today takes issue with Souter*s equitable tolling holding, that discussion is irrelevant here for the obvious reason that Henderson never purports to make the requisite showing of actual innocence— which he cannot do, of course, in the absence of newly discovered evidence and a constitutional error at sentencing.
This analytical enigma comes home to roost in the failed effort of the panel majority to apply the Sawyer “reasonable juror” standard here, where it simply has no place. The majority summarizes the State’s position as: “Henderson cannot show by clear and convincing evidence that no reasonable juror could find that he is *787 not mentally retarded.” This differs significantly, however, from the Sawyer standard that asks, but for the constitutional error, would reasonable jurors have sentenced the petitioner to death? I find the panel majority’s extensive discussion of actual innocence not only misplaced but also susceptible of unintentionally leading to further error by including the Atkins immunity defense within the set of all actual innocence defenses.
Properly, Henderson’s unfettered right to assert his Atkins claim must be assessed entirely separately and apart from any actual innocence analysis and likewise without application of the AEDPA’s time bar. Reduced to its essentials, Henderson’s argument is that his Atkins claim should not be subject to any procedural bar because the Constitution forbids his execution vel non.[27] Like the panel majority in Part II.B of its opinion, I interpret Henderson to argue that a “fundamental miscarriage of justice” would result if, at this juncture, the AEDPA’s statute of limitations were allowed to bar his Atkins claim. Even though to date the miscarriage of justice principle has only been applied as an exception to procedurally defaulted claims, that maxim is equally applicable to putatively time-barred claims. As the Supreme Court stated almost thirty years ago: “In appropriate cases those principles [of comity and finality] must yield to the imperative of correcting a fundamentally unjust incarceration.”[28] Most recently, the Court acknowledged:
AEDPA seeks [to eliminate delays in the federal habeas review process] without undermining basic habeas corpus principles and while seeking to harmon *788 ize the new statute with prior law, under which a petition’s timeliness was always determined under equitable principles .... The importance of the Great Writ, the only writ explicitly protected by the Constitution, Art. I, § 9, cl. 2, along with congressional efforts to harmonize the new statute with prior law, counsels hesitancy before interpreting AEDPA’s statutory silence as indicating a congressional intent to close courthouse doors that a strong equitable claim would ordinarily keep open.[29]
If we were to condone the barring of Henderson’s Atkins claim by the AEDPA’s statute of limitations, without ever affording him a federal opportunity to demonstrate his intellectual disability, then allowing the State to execute him would not only be “fundamentally unjust”; it would be unconstitutional per se.[30]
In conclusion, even though the panel majority is correct that Henderson does not assert a valid Sawyer claim of actual innocence, its reasoning is fatally flawed by erroneously presuming that every Atkins claim is necessarily an actual innocence claim. But, as I have laboriously demonstrated above, that assumption simply is wrong: Sawyer bars the execution of a petitioner who did not factually commit the elements of the crime that made it a capital offense or the aggravating factors that led the jury to impose the death penalty, or both. In stark contrast, Atkins bars the execution of an intellectually disabled petitioner even if the courts are absolutely certain (and the petitioner does not contest) that he committed each element of the capital offense and that he is guilty of those aggravating factors that led to his death sentence.
Thus, it is its foundational error in classifying an Atkins claim as one of actual innocence that leads the panel majority to cause Henderson’s claim to fail under the Sawyer analysis. This is error because his simply is not a claim of “actual innocence” to begin with.[31] The obvious reason why his claim fails to meet the Sawyer standard is that the Sawyer standard is not applicable to an Atkins claim. The same is true of the AEDPA’s statute of limitations: It was never meant to apply, and never should be applied, to an Atkins claim — or to a Ford or Roper claim for that matter.[32]
It is axiomatic that a fundamental miscarriage of justice generally excuses a procedural default of a petitioner’s claim the *789 substance of which, if credited, would avoid such a miscarriage. It is equally axiomatic that a potential miscarriage of justice must trump the AEDPA’s time bar to an otherwise properly asserted Atkins claim, even if that assertion is made outside the limitations period and is not equitably tolled. Properly analyzed, a fundamental miscarriage of justice will occur if Henderson is executed without having been given a federal habeas opportunity to prove, per Atkins, that he is intellectually disabled.[33]
It is for these reasons that, with respect, I am compelled to dissent.

. As did the Supreme Court in Atkins, we have heretofore referred to “mental retardation.” But, a recent act of Congress mandates use of the phrase "intellectual disability” in place of "mental retardation” in all federal enactments and regulations. See Rosa's Law, Pub.L. No. 111-256 (Oct. 5, 2010).

. I am likewise convinced that by doggedly pursuing an opportunity for their client to obtain a substantive determination whether he is "intellectually disabled" and thus immune from the death penalty, Henderson's long-serving pro bono counsel are not simply playing for time. Indeed, four justices of the Texas Court of Criminal Appeals joined a concurrence which stated that Henderson’s "case presents a close question on the ultimate factual issue of mental retardation.” Ex Parte Henderson, No. WR-37658-03, 2006 WL 167836, at *1 (Tex.Crim.App. Jan. 25, 2006) (Cochran, J., concurring).

. 506 U.S. 390, 417, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). The best example might well be the burgeoning number of conviction reversals on the basis of new or improved DNA evidence.

. 513 U.S. 298, 314-15, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

. The Supreme Court has explained that "Schlup’s evidence of innocence need carry less of a burden [than Herrera's]” because Herrera's evidence of factual innocence must "be strong enough to make his execution 'constitutionally intolerable’ even if his conviction was the product of a fair trial,” whereas Schlup's evidence "must establish sufficient doubt about his guilt to justify the conclusion that his execution would be a miscarriage of justice unless his conviction was the product of a fair trial.” Id. at 316, 115 S.Ct. 851 (emphases in original).

. 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

. Id. at 350, 112 S.Ct. 2514 (emphasis added).

. Id. at 341, 112 S.Ct. 2514.

. Id.

. Id. at 347, 112 S.Ct. 2514.

. Callins v. Johnson, 89 F.3d 210, 215 (5th Cir.1996) (emphases added).

. 477 U.S. 399, 410, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986).

. 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).

. In most immunity claims, the petitioner does not dispute his guilt. Instead, he argues that "[t]he death penalty may not be imposed on certain classes of offenders, such as juveniles under 16, the insane, and the mentally retarded, no matter how heinous the crime.” Roper, 543 U.S. at 568, 125 S.Ct. 1183 (citations omitted).

. Ford, 477 U.S. at 410, 106 S.Ct. 2595.

. Graham v. Florida,-U.S.-, 130 S.Ct. 2011, 2021-22, 176 L.Ed.2d 825 (2010). See also Kennedy v. Louisiana, 554 U.S. 407, 128 S.Ct. 2641, 2650, 171 L.Ed.2d 525 (2008) (referring to Atkins in the context of the Supreme Court's "confining the instances in which the [death penalty] can be imposed”); Roper, 543 U.S. at 563-64, 125 S.Ct. 1183 (explaining that Atkins "ruled that the death penalty constitutes an excessive sanction for the entire category of mentally retarded offenders”).

. Herrera, 506 U.S. at 406, 113 S.Ct. 853.

. To be sure, other circuits have also confused this issue. See, e.g., Sasser v. Norris, 553 F.3d 1121, 1125 n. 4 (8th Cir.2009) (applying Sawyer to an Atkins claim concluding generally that "[a] petitioner is 'actually innocent' of the death penalty where he is ineligible for the death penalty”).

. 605 F.3d 256 (5th Cir.2010).

. 28 U.S.C. § 2255(h)(1) (emphasis added).

. In re Webster, 605 F.3d at 257-58.

. Id. at 258-59 & n. 7.

. "The special Sawyer-version of the 'miscarriage of justice' exception is limited to assertions of errors of constitutional magnitude occurring at sentencing.” Fearance v. Scott, 56 F.3d 633, 637-38 (5th Cir.), cert. denied, 515 U.S. 1153, 115 S.Ct. 2603, 132 L.Ed.2d 847 (1995).

. See Fed R.Civ.P. 8(d)(2).

. 395 F.3d 577 (6th Cir.2005).

. Id. at 596-97, 599.

. I am puzzled by the panel majority's accusation, in its footnote 2, that — by insisting that the AEDPA’s time bar is inapplicable to Henderson’s Atkins claim of constitutional ineligibility for, i.e. “immunity from,” the death penalty — I am advancing an argument that Henderson did not make, and thus waived. This is obviously not the case, but, don’t take my word for it: The second paragraph of Part II.B of the panel majority opinion refutes that accusation when it correctly describes Henderson's "alternative claim” as:
irrespective of any procedural bar, the court should reach the merits of his Atkins claim because he is actually innocent of the death penalty .... irrespective of equitable tolling, the court must address the merits of his mental retardation claim because failing to do so would constitute a fundamental miscarriage of justice[ ] ... in a case in which the petitioner is actually innocent of the death penalty because he is mentally retarded and thus, under the Eighth Amendment of the Constitution, ineligible for capital punishment (emphases added).
What can "irrespective of any procedural bar” and "irrespective of equitable tolling” in Henderson's alternative argument possibly mean if not that the AEDPA’s statute of limitations does not apply to his Atkins claim? Surely, he would not abandon his primary claim of equitable tolling if he were not asserting, in the alternative, the inapplicability of the AEDPA's time bar. When read in combination with its acknowledgment, in footnote 2, that Henderson devotes a paragraph in his brief to arguing my point — that Atkins claims are not subject to the AEDPA's time bar — the panel majority’s footnote statement that my argument is "unasserted, unargued, unbriefed, and unraised” by Henderson just doesn't hold water.
To verify this, all that needs be done is to (1) take the panel majority's description of Henderson's alternative claim and my analysis of why Henderson’s Atkins claim should not be barred by time or procedure, (2) set them down, side by side, and (3) read each in light of the other: It will be obvious that, together, the panel majority’s succinct description of Henderson's unwaived argument and the quotation of Part II of Henderson’s brief in the majority’s footnote 2 describe precisely the position that I advocate here. The majority’s mischaracterization of my point in its footnote 2 is, at best, a semantic quibble. So, if you take it at all, do so with a grain of salt.

. Engle v. Isaac, 456 U.S. 107, 134, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

. Holland v. Florida,-U.S.-•, 130 S.Ct. 2549, 2562, 177 L.Ed.2d 130 (2010) (internal citation omitted).

. Traditionally, the "miscarriage of justice” exception has been considered to be synonymous with the “actual innocence” exception. See Sawyer, 505 U.S. at 339, 112 S.Ct. 2514 (referring to "the miscarriage of justice, or 'actual innocence,’ exception”). Nonetheless, there is a viable argument that the principle can extend beyond the precise nuances of “actual innocence” claims.

. Notably, the panel majority never addresses the substance of my analysis that Henderson’s Atkins claim was never meant to fit (and indeed cannot fit) into the actual innocence framework.

. In its footnote 2, the panel majority faults my dissent for not making "compatible company” with recent opinions that I joined. In cherry picking isolated statements in two of the cases that it references, however, the majority overlooks the outcomes reached in those opinions — outcomes that are very much compatible with my dissent.
In one, Rivera v. Quarteiman, 505 F.3d 349 (5th Cir.2007), we remanded the petitioner's Atkins claim for consideration of equitable tolling in light of our substantive determination that, indeed, the petitioner was intellectually disabled. Because the petitioner had sought equitable tolling on the ground that he lacked the mental capacity to represent himself pro se, we concluded that "the merits blend inseparably into the question of equitable tolling here” and that “answering whether [petitioner] is retarded is logically anteced *789 ent — if not a core element itself — to determining whether equitable tolling is available.” Id. at 355. We therefore remanded the case to the district court for consideration of equitable tolling in pari materiae with our holding that Rivera’s Atkins claim was meritorious. The sequence of the Rivera proceedings was precisely the reverse of that in the instant case. In Rivera, we did not — repeat, did not — apply the AEDPA’s statute of limitations to bar the petitioner’s Atkins claim. Similarly, in In re Wilson, 442 F.3d 872 (5th Cir. 2006), we declined to apply the AEDPA's statute of limitations to bar the petitioner’s Atkins claim. Instead, we simply held that the timing of the particular petitioner’s pursuit of his claim there at issue qualified for equitable tolling, implying nothing more than that if the AEDPA’s time bar applied it would be trumped by equitable tolling. See id. at 878.
Incidentally, the other two cases to which the panel majority cites — and in which I did not join — relied on In re Wilson for the proposition that the AEDPA's statute of limitations bars an Atkins claim in the absence of equitable tolling. See In re Lewis, 484 F.3d 793, 798 n. 20 (5th Cir.2007) ("We have previously applied the limitations period to Atkins claims ....”) (citing In re Wilson, 442 F.3d 872); In re Johnson, 325 Fed.Appx. 337, 340 (5th Cir.2009) ("[Tjhis Court has never held that Atkins claims are somehow exempt from the limitations period. To the contrary, this Court has held that a successive federal petition based on mental retardation claims is subject to § 2244(d)'s one-year statute of limitations ....”) (citing In re Wilson, 442 F.3d at 877-78; In re Lewis, 484 F.3d at 796). As explained above, however, that simply was not our holding in In re Wilson.
Thus, although the opinions in Rivera and In re Wilson might have implicitly assumed arguendo that the AEDPA's statute of limitations would apply to an Atkins claim in the absence of equitable tolling, in neither case did we actually apply that time bar. My dissent, I submit, is not only "compatible company” with these previous decisions, but is a natural extension of them: Despite employing equitable tolling to avoid application of the AEDPA's statute of limitations to Atkins claims in the past, my panels never needed to decide — and thus never did decide (as the panel majority does today) — whether the AEDPA's the statute of limitations would absolutely bar an Atkins claim when and if a petitioner might fail to qualify for equitable tolling. To the extent that the panel majority nevertheless remains convinced of my inconsistency, however, I shall rely on Emerson's observation that "a foolish consistency is the hobgoblin oflittle minds.”

. If I am right in substance but my colleagues interpret the binding precedent of this court as holding that the AEDPA’s statute of limitations does apply to Atkins claims, then this issue is ripe for en banc reconsideration or — in the absence of that — certiorari.