United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 24, 2005**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-70024
_____

MELVIN WAYNE WHITE,

Petitioner - Appellant,

versus

DOUGLAS DRETKE, Director,
Texas Department of Criminal Justice -
Institutional Division,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

Before JONES, BENAVIDES, and CLEMENT, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

Melvin Wayne White was convicted of capital murder and
sentenced to death for the murder of nine-year-old Jennifer Lee
Gravell in the course of committing or attempting to commit
kidnapping, or in the course of committing or attempting to commit
aggravated sexual assault. After exhausting state remedies, White
filed a § 2254 petition for a writ of habeas corpus in federal
district court raising two grounds for relief. The district court
wrote a thorough and well-reasoned opinion that granted the state's

_____

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

motion for summary judgment on the two issues, dismissed White's petition, and refused to grant a certificate of appealability ("COA") on either issue raised.

White now seeks a COA from this court on two issues: (1) whether the evidence admitted at trial and during the punishment phase was sufficient to support the jury's affirmative answer to the future dangerousness special issue; and (2) whether he can show cause to excuse the procedural default of his challenge to the "good-time" jury instruction given at punishment. We deny a COA on each claim.

## BACKGROUND

On August 4, 1997, then forty-seven-year-old White kidnapped, sexually assaulted and murdered a nine-year-old girl who lived in his neighborhood in Ozona, Texas. On the night of a neighborhood barbeque, White went home between 10:30 and 11:00 p.m. after consuming several alcoholic drinks. Around this time, the victim came over to his house. White took her in his truck to a roadside rest area where he bound the girl's hands behind her back with electrical tape, stuffed a sock in her mouth and sexually assaulted her with an object – possibly a screwdriver. He also admitted that he penetrated her vagina with his finger. White then killed the girl by repeatedly striking her head with a tire tool and dumped her body behind a water tank in a field outside of town. In a trash can in White's house, investigators discovered the

2

victim's underpants, sandals, and a ball of electrical tape with her hair in it.

At the punishment phase of trial, the prosecution presented evidence that White had forced his daughter to perform oral sex and penetrated her with his finger when she was twelve years old. White's daughter testified that two years later her father had offered her fifty dollars per week if she would provide him with sexual favors upon demand. Further evidence demonstrated that when White was between ten and twelve years old he touched the genitals of a four-year-old relative. Additionally, a witness testified that White allowed teenagers to have parties at his house where alcohol was served, and during a party he touched a teenage girl's breast. Another witness testified that White had watched her engage in sex with his son and later described the events in detail.

Dr. Windell Dickerson, the chief psychologist employed by the Texas prison system, opined for the prosecution that, if one believed that White had raped his daughter, then White posed a very serious risk for further violent conduct. Dr. Dickerson concluded that White was "at substantial risk" or "considerable risk" of committing criminal acts of violence that would constitute a continuing threat to society. Specifically, he stated that "the possibility of Melvin Wayne White doing something else in or out of prison is substantially greater than it is for an individual who is doing okay in their life." Dr. Dickerson further testified that

3

research indicates that sex offenders "tend to commit multiple kinds of sex offenses."

Dr. Dickerson also informed the jury that women serve among the prison staff, and in most units of the prison system, there have been escapes from prison, including one from death row. Further, alcoholic beverages are available inside prison even though their consumption violates prison rules.

On June 10, 1999, the jury found White guilty of capital murder. Following a separate punishment hearing, the jury answered in the affirmative the special issues set forth in Texas Code of Criminal Procedure article 37.071(b), and White was sentenced to death. On direct appeal, the Texas Court of Criminal Appeals ("CCA") affirmed White's sentence and conviction in an unpublished opinion. White v. State, No. 73,592 (Tex. Crim. App. Jan. 31, 2001). On September 7, 2000, White commenced a state application for writ of habeas corpus. The state district court held an evidentiary hearing and entered findings of fact and conclusions of law recommending denial of relief. The CCA denied relief in an unpublished order adopting the findings and conclusions entered by the trial court.

## DISCUSSION

White's § 2254 habeas petition is subject to the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA). See Penry v. Johnson, 532 U.S. 782, 121 S. Ct. 1910, 150 L. Ed. 2d 9

4

(2001). AEDPA mandates that White obtain a COA before he can appeal the district court's denial of habeas relief. 28 U.S.C. § 2253(c)(1). Indeed, "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

A COA will issue only when the petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2000); Miller-El, 537 U.S. at 336, 123 S. Ct. 1029. To make such a showing, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Id.

"[A] COA ruling is not the occasion for a ruling on the merit of petitioner's claim." Id. at 331. Rather, at this stage we engage in an "overview of the claims in the habeas petition and a general assessment of their merits." Id. at 336. "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Id. at 338.

Although the nature of the death penalty is a proper consideration for determining whether the court should issue a COA, its severity alone is not sufficient to warrant the issuance of the certificate. Ogan v. Cockrell, 297 F.3d 349, 355 (5th Cir. 2002).

5

Nevertheless, doubts regarding the propriety of issuing the certificate in a death penalty case should be resolved in favor of the petitioner. Id.

Even if the petitioner succeeds in obtaining a COA, he is not necessarily entitled to habeas relief. "To prevail on a petition for writ of habeas corpus, a petitioner must demonstrate that the state court proceeding 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Robertson v. Cockrell, 325 F.3d 243, 247-48 (5th Cir. 2003) (en banc) (quoting 28 U.S.C. § 2254(d)(1) (2000)). Before this court may grant habeas relief under the "unreasonable application" standard, "the state court's application must be more than merely incorrect." Id. at 248. Rather, the more appropriate inquiry is whether the "state court's application of clearly established federal law was objectively unreasonable." Cotton v. Cockrell, 343 F.3d 746, 750 (5th Cir. 2003).

1.  The Legal Sufficiency of the Evidence Supporting the Jury's Finding of Future Dangerousness

White contends that the evidence was insufficient to support the jury's affirmative answer to the second special punishment issue, namely, whether there is, beyond a reasonable doubt, a probability that White would commit acts of violence constituting

a continuing threat to society.[1]  Further, White contends that the evidence presented by the state's mental health expert that White could commit future violent acts in prison was too speculative to support the jury finding.  White argues from <u>Jurek</u> that the constitutional validity of the Texas death penalty statute is predicated on a restrictive interpretation of Texas's "future dangerousness" special issue and a limitation of capital punishment to only the most extraordinary crimes.  See <u>Jurek v. Texas</u>, 428 U.S. 262, 273-74, 276, 96 S. Ct. 2950, 49 L. Ed. 2d 929 (1976).

When a habeas petitioner asserts that the evidence presented to the state court was insufficient to find future dangerousness, the limited question before a federal habeas court is whether the state courts' decision to reject that claim was an objectively unreasonable application of the clearly established federal law set out in <u>Jackson v. Virginia</u>, 443 U.S. 307, 323, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  See <u>Martinez v. Johnson</u>, 255 F.3d 229, 241 n.21 (5th Cir. 2001) ("Therefore, our review of the CCA's decision is properly framed as whether that decision constitutes an 'unreasonable application' of <u>Jackson</u>.");  <u>Callins</u>

---

[1]    According to White, a reasonable juror could, from the evidence presented at sentencing, have concluded that he posed a future danger of sexual violence toward young girls, and presented a much smaller risk of more generalized violence when he was intoxicated.  On the other hand, a reasonable jury could not have concluded beyond a reasonable doubt that White would present a future danger because imprisonment would deprive him of access to young girls and alcohol, the two stimuli previously associated with the violent conduct in his life.  According to White, the chance that he would live long enough to be released was nearly non-existent because White was forty-nine years old at sentencing and would not have been eligible for release until he was almost ninety years old if not sentenced to death.

7

v. Collins, 998 F.2d 269, 276 (5th Cir. 1993) (citing Jackson). Under Jackson, a conviction is constitutional if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  443 U.S. at 319, 99 S. Ct. 2789.

The CCA began its review of White's capital sentence by directly citing Jackson and framing its analysis under that constitutional standard.[2]  The CCA then stated that, under Texas law, a jury may consider several factors to support a finding of future dangerousness, including:  (1) the circumstances of the capital offense; (2) the calculated nature of the defendant's conduct; (3) the deliberateness exhibited in the execution of the crime; (4) the existence and severity of any previous offenses committed by the defendant; (5) the defendant's age and personal circumstances at the time of the offense; (6) whether, at the time of the offense, the defendant was acting under duress; (7) psychiatric evidence; and (8) character evidence. White v. State, No. 73,592, slip op. at 2-3 (Tex. Crim. App. Jan. 31, 2001) (citing Wilson v. State, 7 S.W.3d 136, 142 (Tex. Crim. App. 1999)).  The CCA then

---

[2]    White v. State, No. 73,592, slip op. at 2 (Tex. Crim. App. Jan. 31, 2001) ("In analyzing appellant's claim, we view the evidence in the light most favorable to the jury's verdict and ask whether a jury rationally could have concluded beyond a reasonable doubt that 'there is a probability that [appellant] would commit criminal acts of violence that would constitute a continuing threat to society.'  Jackson v. Virginia, 443 U.S. 307 (1979); Barnes v. State, 876 S.W.2d 316, 322 (Tex. Crim. App. 1994).").

8

cited its substantive law that the circumstances of the charged offense may alone be sufficient to support an affirmative finding of future dangerousness.  Id.[3]

The CCA reviewed and rejected White's sufficiency of the evidence claim.  In so doing, the CCA recited the relevant evidence and reasoned as follows:

> A rational jury could find that the circumstances of the instant offense alone indicate [White] would commit future violent criminal acts – the acts committed by [White] were particularly gruesome.  See, e.g., Williams v. State, 937 S.W.2d 479, 484 (Tex. Crim. App. 1996).  But the offense is not an isolated incident of sexual abuse on the part of [White]. [White] has a history of sexually assaulting young girls.  Additionally, [White] has been physically violent against both women and men.  Furthermore, both the prosecution's and [White]'s psychological experts stated that [White] would likely commit offenses against female children in the future.  Considering the evidence presented at guilt/innocence and punishment and the factors detailed above, we conclude that there was sufficient evidence to support the jury's conclusion that there was a probability that [White] would be a future danger to society.  Barnes [v. State, 776 S.W.2d 316, 322 (Tex. Crim. App. 1994)].

> The jury's affirmative answer to the future dangerousness issue is reasonable even if, as [White] suggests, we disregarded the well-settled law and redefine "society" to include only the prison population.  See, e.g., Narvaiz v. State, 840 S.W.2d 415, 424 (Tex. Crim. App.

---

[3]  It should also be recognized that the CCA has stated that the term "continuing threat to society" requires no special definition.  The term is to be understood in its usual acceptance in common language and need not be defined in the charge to the jury.  Lackey v. State, 819 S.W.2d 111, 118 n.2 (Tex. Cr. App. 1989).  The term "includes not only free citizens but also inmates in the penitentiary.  Therefore, the length of time appellant remains incarcerated is not relevant to the issue of whether he will be a continuing threat to society."  Jones v. State, 843 S.W.2d 487, 495 (Tex. Crim. App. 1992) (internal citation omitted);  Narvaiz v. State, 840 S.W.2d 415, 424 (Tex. Crim. App. 1992) (noting that the state's burden is to prove that a capital defendant poses "a continuing threat, whether in or out of prison").

9

1992).  The prosecution's psychological expert testified that [White] was likely to be a target of violence in prison.  "The more he is a recipient of it, the more likely he is to act out in that way."  The expert also testified that women work on the staff at prisons.  Additionally, the expert stated that in the absence of women, some men "will tend to shift to guys."  In light of this evidence, we concluded that the jury could find beyond a reasonable doubt that someone like appellant, who kidnaps, sexually assaults and murders a 9-year-old girl, would be dangerous to prison society as well as non-prison society.  See Barnes, 876 S.W.2d at 322.

Id. at 5-6.

Under the limited scope of AEDPA review, the district court concluded that the CCA was not objectively unreasonable in its application of the Jackson standard in determining, after a review of the evidence in the light most favorable to the prosecution, that a rational trier of fact could find the essential elements of future dangerousness beyond a reasonable doubt.  A rational finder of fact could have found beyond a reasonable doubt that White posed a future danger based on its consideration of the brutal nature of the crime and the violent manner of the treatment of the victim's body.  Additionally, the testimony of the experts and witnesses concerning White's background and behavior, even though disputed, supports a finding of future dangerousness.  Based on the evidence presented at trial, including the evidence of the expert psychological witness, a jury could have concluded that White posed a future danger whether in or out of prison.  White has not demonstrated that reasonable jurists could debate whether, or disagree that, the district court should have resolved his habeas

petition in a different manner.  Therefore, we deny White's application for COA on this issue.

2.  Cause to Excuse Procedural Default of the Underlying Claim that the Jury Received a Constitutionally Inaccurate Instruction on White's Eligibility for Good Time Credit.

White argued before the district court that an instructional error on the possibility of parole introduced unwarranted uncertainty about the length of time White would be required to spend in prison, and thus tainted his sentencing proceedings with a level of unreliability inconsistent with the protection of the Eighth and Fourteenth Amendments.  According to White, his jury was incorrectly instructed that if he received a life sentence, he would be eligible to "earn time off the period of incarceration imposed through the award of good conduct time." White contends that this instruction was incorrect because those sentenced to life prison terms for capital murder are ineligible for good conduct reductions.  White admits that his trial attorneys did not lodge an objection to this instruction, and that this issue was not raised on either direct appeal or state habeas proceedings.

The district court rejected White's argument on the basis of procedural bar.  White v. Dretke, No. P-01-CV-076, slip op. at 32-33 (W.D. Tex. Apr. 22, 2004).  Additionally, the district court determined that an argument that state habeas counsel provided ineffective assistance did not excuse the procedural default.  Id. The court alternatively found no merit in White's claim.  White now

11

seeks a COA to determine whether he has demonstrated cause to excuse the procedural default of his jury instruction claim.

The law requires that "a state prisoner seeking to raise claims in a federal petition for habeas corpus ordinarily must first present those claims to the state court and must exhaust state remedies." Martinez v. Johnson, 255 F.3d 229, 238 (5th Cir. 2001) (citing 28 U.S.C. § 2254(b)). Generally, if the petitioner fails to follow these procedures, his claims will be considered procedurally defaulted and will not be regarded as grounds for granting federal habeas relief. Id. at 239 (citing Keeney v. Tamayo-Reyes, 504 U.S. 1, 9, 112 S. Ct. 1715, 118 L. Ed. 2d 318 (1992)). However, a petitioner can overcome this procedural default if he can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law. Id. (citing Jones v. Johnson, 171 F.3d 270, 277 (5th Cir. 1999)).

White asserts that the ineffective performance of his counsel at each of the state trial, appellate and habeas proceedings provides cause that excuses his default. White argues that because of his state habeas counsel's damaging ineffective-ness, which prevented him from demonstrating counsel's ineffec-tiveness at the sentencing stage and on direct appeal, he can demonstrate cause excusing the procedural default.

White's argument is foreclosed by circuit precedent. This court has consistently held that ineffective assistance of

12

state habeas counsel cannot provide cause for a procedural default. See, e.g., Ogan v. Cockrell, 297 F.3d 349, 357 (5th Cir. 2002); Martinez, 255 F.3d at 245; In re Goff, 250 F.3d 273, 274-76, (5th Cir. 2001). This is because there is no underlying right to counsel in state post-conviction review and there is no cognizable constitutional claim based on the ineffectiveness of state habeas counsel. Jones v. Johnson, 171 F.3d 270, 277 (5th Cir. 1999); Callins v. Johnson, 89 F.3d 210, 212 (5th Cir. 1996).

Accordingly, reasonable jurists could not disagree as to whether White has articulated a claim of cause to excuse the procedural default of his claim of instructional error. We therefore deny a COA on this issue.

## CONCLUSION

Because we **DENY** White's application for COA on both of the issues raised, we lack jurisdiction to review the district court's denial of habeas relief.

**COA DENIED.**

13